UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ELLEN YANICK,

     Plaintiff,

v.

                                                    Case No. 21-11582
                                                    Honorable Victoria A. Roberts

THE KROGER CO.
OF MICHIGAN,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT [ECF NO. 18]

### I.    INTRODUCTION

Mary Ellen Yanick filed suit against the Kroger Company of Michigan ("Kroger") for allegedly discriminating against her because of her breast cancer. Yanick alleges: (1) discrimination; (2) failure to accommodate; and (3) retaliation, all under the Americans with Disabilities Act ("ADA").

Before the Court is Kroger's motion for summary judgment. Because Yanick fails to establish a genuine dispute of material fact in any of her claims, the Court **GRANTS** Kroger's motion.

### II.    FACTUAL BACKGROUND

Yanick was a bakery manager at Kroger from 2001 to May of 2018 (13 years). On January 23, 2018, Yanick learned that she had breast

cancer. One day later on January 24, Marli Schnepp began as Kroger's new store manager. The same day, Yanick informed a supervisor and Human Resources that she had cancer. The supervisor informed Schnepp of Yanick's cancer.

Yanick says that after learning of her cancer diagnosis, Schnepp began to "conduct a campaign of harsh criticism," putting overt pressure on Yanick to step down from her managerial role. [ECF No. 19, PageID.366-367].

Yanick says that Schnepp began visiting her department, constantly questioning and badgering her. Schnepp testified that she would walk the store, see problems in multiple departments, and have conversations with department heads (including Yanick) to fix the issues. Schnepp testified that in the bakery department, Yanick was not baking the correct products or putting enough merchandise on display. Schnepp also testified that "at least one or twice a week," she or an assistant manager were in the bakery baking goods to "help them get caught up." [ECF No. 18-4, PageID.300]. Yanick does not dispute this.

On February 7, Schnepp called Yanick into her office. She told her that she did not meet expectations in her role as bakery department manager. Yanick had an explanation, and wrote in her notes later that

Schnepp refused her request for a union representative of her choice to be in the room.

On February 15, Schnepp called Yanick into her office for another meeting, presenting Yanick with a list of duties she was responsible for as bakery manager. The two reviewed the list together. Schnepp explained that if Yanick was to continue as bakery manager, she needed to complete the list of daily expectations. Schnepp said that if Yanick failed to meet expectations, Kroger "[would] then take the next step in the discipline process up to and including termination." [ECF No. 19, PageID.373].

Yanick says that during this meeting, Schnepp also suggested that she should "step down" from her position. Yanick told Schnepp that she was going on medical leave for a breast cancer surgery. She says that immediately after she said this, Schnepp said "it might be a good time for you to think about stepping down." [ECF No. 19, PageID.376]. 30 minutes after the meeting's end, Yanick went on medical leave.

On February 21, Yanick filed a "hotline" complaint against Schnepp. She said Schnepp badgered and pressured her to step down as bakery manager.

On June 11, Yanick returned to work. She resumed her duties as bakery manager, under no restrictions.

On June 18, Schnepp met with Yanick and told her that she was still inadequately performing her job. Yanick replied that she "was struggling, it was hard for [her] physically, and [Kroger] rolled out a few new programs since [she] came back." [ECF No. 18-2, PageID.273]. Schnepp suggested a second time that Yanick consider a bakery clerk position. Yanick responded by saying she would step down. Before the meeting's end, she changed her mind and declined to accept the bakery clerk role.

The next day, Yanick told another Kroger supervisor about the meeting, saying that Schnepp wanted her to step down. The supervisor told Yanick that "they can't do that." *Id.* at PageID.275.

On June 20, HR representative Rob Allen spoke with Yanick and Schnepp. Schnepp told Allen that the three employees in the bakery department "did not want to work with [Yanick]." *Id.*

On June 22, Yanick met with Schnepp and those employees. Two of the employees said that the department needed to be more organized and could use more help.

On June 26, Yanick stepped down as bakery manager. She transferred to a different Kroger and assumed the role of bakery clerk. Her new position came with a lower salary and the removal of all management authority.

Kroger says that Schnepp encouraged Yanick to step down from her role as manager because Yanick was not adequately performing her duties. Yanick says that Kroger discriminated against her because of her cancer, and forced her to take a demotion.

## III.   LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

The movant bears the initial burden to inform the Court of the basis for the motion and must identify portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324.

A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Claims that are not supported by admissible evidence are insufficient to establish a factual dispute, as is

the mere existence of a scintilla of evidence in support of the non-movant's position. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

The Court must view all submitted evidence, facts, and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. *See Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir.1994). The necessary inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (internal quotes omitted).

## IV.  ANALYSIS

Yanick alleges three ADA claims: (1) disability discrimination; (2) failure to accommodate; and (3) retaliation.

### A. Yanick cannot establish disability discrimination (Count I) because she cannot show that she suffered an adverse action.

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that she: (1) is "disabled" within the meaning of the ADA; (2) is otherwise qualified to perform the requirements of the job, with or

without reasonable accommodation; and (3) suffered an adverse employment decision because of the disability. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001).

Kroger does not challenge that Yanick is disabled within the meaning of the ADA. *See* 42 U.S.C. § 12102(2). Nor does it challenge that Yanick was otherwise qualified to perform her job.

Regarding the third element of discrimination, Kroger argues that Yanick suffered no adverse employment decision ("adverse action") because she relinquished her title as bakery manager voluntarily. But Yanick argues that she was "constructively demoted," considered to be an adverse action in the Sixth Circuit. *See Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 920 (6th Cir. 2014).

A constructive demotion claim is analyzed under the same framework as a constructive discharge claim. *See id.* at 920. To demonstrate a constructive demotion, Yanick must offer evidence to show that "1) the employer . . . deliberately create[d] intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit [or be demoted]." *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005)

(internal citations omitted).

The Sixth Circuit adopted the Fifth Circuit's approach to determining whether the "intolerable conditions" prong has been met:

> Whether a reasonable person would have [felt] compelled to resign *depends on the facts of each case*, but we consider the following factors relevant, [individually] or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; . . .; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* (internal citation omitted) (emphasis added). These factors are *relevant*, but not dispositive. *See id.*

Yanick argues that the intolerable conditions prong was met because Kroger 1) demoted her; 2) reduced her salary; and 3) badgered and harassed her to step down. Kroger does not concede that Yanick was demoted; rather, it argues that she stepped down voluntarily.

To establish the "intolerable conditions" prong, Yanick makes a completely circular argument, essentially stating that the "demotion" and reduced salary establish that her work conditions were "intolerable." Because her demotion and reduced salary occurred *after* she stepped down, they cannot support her claim of constructive demotion. The Court declines

8

to assess these factors in its analysis.

Thus, the only evidence Yanick logically provides to support that she was constructively demoted was that Schnepp "badgered and harassed her" to step down.

To support her badgering argument, Yanick says that: on February 7, 2018, Schnepp called her into the office and told her that she was not doing her job; on February 15, Schnepp again called Yanick into the office and warned that she should step down from her position because she was allegedly not completing her daily tasks; on June 18, Schnepp called her into the office and again suggested that she step down, and threatened to "start putting [Yanick] on paper"; on June 22, Schnepp was "constantly asking questions, paging [her] and riding [her]"; and finally that Yanick was "called into the office one more time, not sure on the date." [ECF No. 19-5, PageID.421-423; ECF No. 16-6, PageID.170].

But the manner in which an employer supervises and/or criticizes an employee's job performance, without more, is insufficient to establish constructive demotion as a matter of law. *Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004), *citing Carter v. Ball*, 33 F.3d 450, 459 (4th Cir.1994) ("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to

compel a reasonable person to resign."); *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 496 (8th Cir.1996) ("Dissatisfaction with a work assignment is, as a matter of law, normally not so intolerable as to be a basis for constructive discharge."); *King v. AC & R Advertising*, 65 F.3d 764, 768–69 (9th Cir.1995) (finding no constructive discharge where the plaintiff's employment status was changed from "for cause" to "at-will"; plaintiff's managerial responsibilities were reduced; and his base salary was reduced).

Yanick's evidence does not establish a constructive demotion. Since this is the only adverse action in play, Yanick's discrimination claim fails as a matter of law.

The *Smith* court did go on to say that the facts before it did not present a "typical" constructive discharge case. *Smith*, 376 F.3d at 534. The *Smith* case could be relied upon to support a constructive demotion claim if there was a failure to accommodate a disability which precipitated an involuntary resignation.

Therefore, "the central issue is whether [Kroger's] alleged . . . refusal to provide a reasonable accommodation converted [Yanick's] resignation into a constructive discharge." *Id.*

As the Court discusses below, because Yanick failed to request a reasonable accommodation in the first place, the answer is no.

10

**B. Yanick cannot establish her failure to accommodate claim (derived from Count I) because she did not request a reasonable accommodation.**

To establish a failure to accommodate claim, a plaintiff must show that: (1) she is disabled under the ADA; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 Fed.Appx. 974, 982–83 (6th Cir. 2011).

The first two elements are not in dispute. And Kroger had reason to know about Yanick's disability because another supervisor told Schnepp on her first day that "Mary Ellen" had cancer. [ECF No. 18, PageID.240]. Though Kroger claims that Schnepp "did not know who Mary Ellen was" at the time, the co-manager's notice gave Schnepp (and Kroger) reason to know of Yanick's cancer. Yanick also informed Schnepp directly that she had cancer. The third element is satisfied.

But it is the employee's burden to propose reasonable accommodations, and a claim such as this must be dismissed if the employee fails to identify and request such reasonable accommodations." *Johnson*, 443 F. App'x at 983. An employee's proposed accommodation is

11

"reasonable" only if it addresses a key obstacle preventing the employee

from performing a necessary function of her job. *Tchankpa v. Ascena Retail*

*Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020).

Yanick argues that she did request a reasonable accommodation,

saying that "[p]laintiff effectively requested an accommodation in her work

schedule because of the effects of her surgery and convalescence. By

Defendant not adjusting Plaintiff's work schedule, and where Defendant did

not identify any undue burden in doing so, Plaintiff has *direct evidence* of a

violation of the ADA." [ECF No. 19, PageID.391-392] (emphasis in original).

Yanick goes on: "Plaintiff told Schnepp in their June 18, 2018 meeting, that

'I was struggling[,] it was hard for me physically . . . it was hard since I worked

53 hours last week & I need to get used to all the work again after being off.'

. . . This is a request for accommodation under the ADA." *Id.* at PageID.392.

Yet, none of this matters because Yanick failed to identify how her

request addressed a key obstacle preventing her from performing a

necessary job function. Yanick fails to meet the *Tchankpa* burden of proof

standard.

Yanick also says that she requested an accommodation by telling

Schnepp that she needed "time to get back to normal" and some additional

training. [ECF No. 18-2, PageID.278]. Again, Yanick's proposed accommodation identified no key obstacle that prevented her from performing a necessary function of her job.

While the Sixth Circuit held that an employee need not use the magic words "accommodation" or even "disability," a request for accommodation "does need to make it clear from the context that it is being made in order to conform with existing medical restrictions." *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007).

The statements Yanick cites to support that she requested a reasonable accommodation (i.e., that she was struggling; it was hard for her physically; and she needed "to get used to all the work again," "time to get back to normal," and some additional training,) do not specify or otherwise make clear that her accommodation requests were needed to conform with medical restrictions imposed because of her breast cancer.

In *Leeds*, the plaintiff alleged that his comments to supervisors that the position he held was "kicking [his] ass" constituted requests for accommodations. *Leeds*, 249 F. App'x at 449. The Sixth Circuit held that those comments were "not nearly specific enough to be considered requests for accommodations." *Id.* Though the Court believes that Yanick's comments

13

were specific enough, she failed to explain how these requests were necessary to remedy a key obstacle in her ability to perform her job. As the *Leeds* court reasoned, "[t]here is nothing that would have indicated to Plaintiff's supervisors that [her] statements meant anything more serious than that the work was hard." *Id.* at 450.

Yanick testified in her deposition that she requested an accommodation by telling a coworker she was "going to need some help" because she would be absent for some doctor's appointments, [ECF No. 18-2, PageID.277]. But Yanick said this to a *coworker*, not the employer. When asked if she made this statement to anyone else, Yanick responded "I don't think so." *Id.* The Court declines to include this statement in its analysis.

Because Yanick did not effectively request a reasonable accommodation under the applicable standard, the Court dismisses her failure to accommodate claim; it is unnecessary to address the final element.

### C. Yanick cannot establish her retaliation claim (Count II) because she cannot establish that Kroger took an adverse action against her.

A prima facie case of retaliation requires a plaintiff to demonstrate that (1) she engaged in activity protected by the ADA; (2) the defendant knew of her exercise of a protected right; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to

severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir.2009).

Because Yanick cannot establish that Kroger took an adverse action against her, *see* Part IV(A), her retaliation claim fails as a matter of law.

## V.    CONCLUSION

Kroger prevails as a matter of law. The Court **GRANTS** its motion for summary judgment on all counts.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  4/20/2023